UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NANCY SHERMAN,

            Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

            Defendant.

CASE NO. 12-cv-05219-JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos. 12, 18, 19).

Although plaintiff had symptoms related to chronic obstructive pulmonary disease and a history of hypertension, no one has concluded that plaintiff is incapable of

performing sedentary work. After reviewing the records, a state agency medical consultant concluded that with identified limitations, "claimant is capable of sedentary work activity on a consistent basis . . . " (Tr. 304). A vocational expert who reviewed the records and listened to plaintiff's testimony similarly concluded that with reasonable accommodations, plaintiff was fully employable (Tr. 54-56). With this information, the ALJ was not required to develop the record further and her decision to deny benefits is without harmful legal error and is supported by substantial evidence in the record as a whole. Therefore, this matter is AFFIRMED.

## BACKGROUND

Plaintiff, NANCY SHERMAN, was born in 1956 and was 51 years old on her alleged onset date of December 31, 2007 (Tr. 20, 118). She graduated from high school and worked in telephone sales for the Kitsap Sun Newspaper for 7 years. She left that job in October of 2001 and was unemployed for 2 years (*id.*). She returned to school to earn a license as a manicurist and an aesthetician (Tr. 37, 153). She began working for a nails salon in June of 2005 (Tr. 153). She was laid off in December of 2007, and has remained unemployed since that date. Over a year after being laid off, in January of 2009, plaintiff reported shortness with breath with activity. She said that she had been having those symptoms for about six weeks (Tr. 234). Shortly therafter, she was examined by cardiologist Dr. David D. Tinker, M.D. He noted that plaintiff had been a smoker for 10 years and was morbidly obese (Tr. 271-72). An electrocardiogram revealed that she had

an ejection fraction[1] of 30-35% and findings consistent with a left bundle branch block.[2] She was diagnosed with dilated cardiomyopathy, etiology uncertain; exertional dyspnea; history of hypertension, treated; hyperlipidemia, on statin; obesity; and COPD (Tr. 272). Plaintiff was placed on beta blockers and a diuretic (Tr. 272). She showed some improved cardiac functioning while under Dr. Tinker's care (*see* Tr. 360, 365). She continued to experience coughing and dyspenia (Tr. 336).

A physical residual functional assessment was performed subsequently by a state agency consultant, Robbie Perry, who concluded after reviewing the medical records, that plaintiff may have had limitations in lifting, squatting, bending, reaching, walking, standing, talking, and stair climbing, yet was capable of sedentary work activity (*see* Tr. 304). These findings were confirmed by reviewing physician Dr. Robert Hoskins, M.D. (Tr. 322). None of the health care professions who treated, examined or reviewed her medical condition has concluded that she was incapable of working.

## PROCEDURAL HISTORY

Plaintiff protectively filed a social security application for a period of disability and disability insurance benefits on January 20, 2009 (Tr. 118). Her application was denied initially and following reconsideration (Tr. 61, 65-66). Plaintiff's requested

---

[1] An ejection fraction is a measure of the amount of blood pumped out of the left ventricle. A normal ejection fraction is 50% or more. Symptoms of a low ejection fraction include shortness of breath, fatigue, chronic cough, and fluid retention. *See* http://hvamd.com/resources/heartistry-printable-pages/low-ejection-fraction.php (last visited June 27, 2012).

[2] Bundle branch block is a condition in which there is a delay or obstruction along the pathway that electrical impulses travel to make the heart beat. Bundle branch block sometimes makes it harder for the heart to pump blood efficiently. *See* http://www.mayclinic.com/health/bundle-branch-block/DS00693 (last visited June 27, 2012).

hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on September 2, 2010 (Tr. 33-58). On September 27, 2010, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act (Tr. 18-26). On February 16, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 CFR §404.981.

Plaintiff filed this complaint on March 15, 2012. Defendant filed the sealed administrative record in this matter ("Tr.") on May 29, 2012 (*see* ECF Nos. 9, 10).

In her Opening Brief, plaintiff raises the following issues:

(1) Whether or not the ALJ failed to accommodate a limitation related to plaintiff's frequent need to use the restroom into the Residual Functional Capacity assessment and whether or not the ALJ properly considered plaintiff's testimony about this need.

(2) Whether or not the ALJ was required to develop the record and call a medical expert regarding the impact of plaintiff's medical condition on her decreased functioning.

(3) Whether or not this matter should be remanded to the Commissioner for payment of benefits for alleged harmful errors in the ALJ's decision.

(ECF No. 12).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is

supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

DISCUSSION

(1) Whether or not the ALJ failed to accommodate a limitation related to plaintiff's frequent need to use the restroom into the Residual Functional

Capacity assessment and whether the ALJ properly considered plaintiff's testimony about this need.

Plaintiff argues that the ALJ failed to take into consideration plaintiff's testimony regarding her need to go to the bathroom every hour to hour and a half (ECF No. 12, page 5). This condition is a common side effect of taking diuretic medication (*see id.*). Plaintiff testified that during the period of alleged disability she would need to go to the bathroom "every hour, every hour-and-a-half maybe" (Tr. 48). She said nothing about urgency (*see id.*). When the vocational expert was called on to testify, she was asked to take into consideration the need for plaintiff to use the restroom once an hour to one every hour and a half (Tr. 55). The vocational expert concluded that even with this limitation, plaintiff would be able to perform work as a sales representative (*id.*). On cross examination, plaintiff's attorney asked the vocational expert whether or not a person with a "sudden urgent situation" who would have to go to the bathroom would still be able to perform this job (*see* Tr. 56-57). The vocational expert concluded that this would "probably have an effect" on being able to be a sales representative (*see* Tr. 57). Plaintiff points to no medical testimony, or any testimony from the plaintiff, that confirms that her need to go to the bathroom regularly was anything other than a common side effect to her diuretic. The ALJ specifically referenced her need to go to the bathroom every hour when presenting plaintiff's residual functional capacity ("RFC") to the vocational expert, on whose testimony the ALJ relied for her finding that plaintiff was capable of performing her past relevant work (*see* Tr. 25-26, 54-56). Based on the

evidence presented, the ALJ concluded that plaintiff still was able to perform her previous past relevant work as a sales representative (Tr. 25-26).

At step-four in the evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevents the claimant from doing past relevant work. *See* 20 C.F.R. § 404.1520(f). If the ALJ finds that the claimant has not shown an incapability of performing past relevant work, the claimant is not disabled for social security purposes and the evaluation process ends. *See id.* Plaintiff bears the burden to establish the inability to perform past work. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e), 416.920(d); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)). As noted by the Ninth Circuit:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, the claimant can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).
>
> Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62; *see* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted] This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

*Id.*

Here, the ALJ took into consideration plaintiff's need to go to the bathroom every hour or hour and a half (Tr. 26). The ALJ appropriately asked the vocational expert who attended the hearing whether or not plaintiff still would be able to perform her past relevant work as a telephone sales representative and the vocational expert concluded that she could do so (Tr. 55, 56). While plaintiff's attorney attempted to argue that this need was "urgent," there is nothing in the record to indicate that plaintiff suffered from anything other than the common side effect associated with taking diuretics.

Based on a review of the relevant record, the Court concludes that the ALJ's summary of the facts and medical evidence; and her RFC findings are supported by substantial evidence in the record as a whole. The ALJ took into consideration plaintiff's need to use the restroom every hour or hour and a half, and her analysis is supported by substantial evidence in the record.

> 2. Whether or not the ALJ was required to develop the record and call a medical expert regarding the impact of plaintiff's medical condition on her decreased functioning.

Plaintiff claims that Dr. Tinker's conclusion regarding plaintiff's heart condition offered no discussion as to how this condition affected plaintiff's functioning (ECF No. 12, page 9). Plaintiff alleges that her financial inability to seek treatment and testing limited her ability to present a complete picture of her impairments and argues that the ALJ should have developed the record by calling upon the services of a medical expert to assess her functional limitations (*id.* at pages 9, 10).

The ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80

F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)). If a social security claimant is not represented by counsel, it is "'incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (*per curiam*) (*quoting Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

In this case, there was uncontradicted evidence from a state medical consultant who had evaluated all of Dr. Tinker's records (*see* Tr. 297-304). He provided a complete functional assessment (Tr. 304). His functional assessment was affirmed by Dr. Robert Hoskins, M.D., who concluded that plaintiff was "clearly limited at best to sedentary work" (Tr. 322.)

These conclusions were not ambiguous, but rather. were based on the medical evidence that was available. While plaintiff argues that Dr. Hoskins' statement that plaintiff could perform sedentary work "at best" was ambiguous and required further medical analysis, the Court disagrees. A person performing a functional assessment is asked to determine the highest extent of the subject's functional capacity. *See* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-

mental requirements of jobs"). Therefore, even though Dr. Hoskins concluded that plaintiff was only capable of performing sedentary work, he was unambiguous that this was within her capabilities. Dr. Hoskins indicated that the areas in which his opinion differed from the opinion of Robbie Perry were "judgment calls and would not alter the decision, hence the affirmation" (*see* Tr. 322). As mentioned previously, Robbie Perry indicated his opinion that plaintiff was "capable of sedentary work activity on a consistent basis . . . ." (*see* Tr. 304). Based on a review of the record as a whole, the Court concludes that the opinion of Dr. Hoskins, regarding whether or not plaintiff was capable of sedentary work, was not ambiguous.

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)).

In light of the record that has been presented, there was substantial evidence upon which the ALJ based her conclusions, and there was no duty to supplement the record since the evidence was unambiguous.

3. Whether or not this matter should be remanded to the Commissioner for payment of benefits for alleged harmful errors in the ALJ's decision.

Because this Court concludes that the ALJ properly evaluated the evidence, there is no need to determine whether or not this matter should be remanded for further proceedings.

## CONCLUSION

The ALJ provided a thorough evaluation of the facts and evidence and appropriately explained her findings and conclusions. The ALJ's findings are without harmful legal error and are based on substantial evidence in the record as a whole.

Based on these reasons and the relevant record, this matter be **AFFIRMED**. **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Dated this 30th day of January, 2013.

J. Richard Creatura
United States Magistrate Judge